No. 7035.

MARIE PERKINS EVANS AND HUSBAND, VS. PAYNE & HARRISON.

A judgment reviving a judgment does not render valid that which is invalid, and does not cure radical nullities in the judgment revived.

An acceptance of service, and waiver of citation authorize a judgment of default to be taken before the expiration of the ordinary ten days delay from the service of citation.

When a party has made no declaration of residence, as provided for in article forty-two of the Civil Code, the proof of fact and intention, as regards the question of domicile, is left to the circumstances of each case.

Where a defendant resides alternately in different parishes, without having made a declaration of residence, he must be cited where he appears to have his principal establishment or habitual residence. If his residence in each parish appears to be nearly of the same nature, he may be cited in either parish, as the plaintiff may elect.

APPEAL from the Fifth Judicial District Court, parish of East Baton Rouge,   McVea, J.

W. C. Flower for plaintiffs and appellants.

Herron, Bird & Beal for defendants.

The opinion of the court was delivered by

EGAN, J.   This suit is brought to annul and set aside a judgment obtained by the defendants against S. D. Linton, in the district court of East Baton Rouge, on the thirteenth of March, 1862, and also a judgment reviving the same, rendered March 25, 1872.   This suit was filed in October, 1876, by the plaintiff, former wife and universal legatee and testamentary heir, as she describes herself, of Linton. The grounds of nullity of the original judgment set up are, that the court was without jurisdiction, Linton's domicile being at the time in Rapides parish ; and, second, that he had no notice of the suit and no citation.

Those urged against the judgment of revival are, that the first judgment being a nullity that of revival is also null and without effect; and, second, that it was rendered prematurely on default before the legal delay had expired from the date of service of citation.

We will dispose of the objections to the judgment of revival, except as they may be considered in the discussion of the original judgment, by saying, first, that we held in McStea vs. Rotchford Brown & Co., 29 An. 69, that a judgment of revival does not make valid that which is invalid, and does not cure radical nullities in the judgment revived; and, second, that we agree with the district judge that although the time had not elapsed to authorize default between the service of citation and default there appears of record and was proved in this case an acceptance of service and waiver of citation by the administrator of Linton which authorized the default. As to the original judgment of March 13, 1862, service was made on the eleventh of May, 1861, on S. D. Linton, as the sheriff's return (p. 13 R.) shows, service being made by delivery to Ackley Perkins, residing at defendant's domicile, in the parish of East Baton Rouge, defendant being absent.

Judgment by default was regularly made final on Friday, the seventh of March, 1862, and the judgment signed on the thirteenth of March, 1862. (Judgment, p. 17 R.) Notice of judgment is found in the Record, p. 171, but no return of service. Ex-Sheriff Babin testifies that he finds by reference to his fee-book a charge for mileage for service of notice of judgment on Linton; from that fact is satisfied service was made. (Babin's testimony, p. 8, R.)

The testimony relative to Linton's residence at the time service of citation was made shows that in 1854 or 1855 he married the daughter of Jehu Perkins, residing on the Richland plantation, in East Baton Rouge, and from that time till the breaking out of the war in 1861 he passed most of his time in East Baton Rouge.

Dr. Henry Perkins and Mrs. Julietta Perkins, the uncle and mother of plaintiff, establish a state of facts which, under the article 166, Code of Practice, authorized suit against Linton in East Baton Rouge. Dr. H. Perkins (p. 31 R.,) says: " He resided temporarily during the time, from 1855 to 1863, in this parish (East Baton Rouge), New Orleans, Pass Christian, and in Paris, France; but always claimed his domicile in Rapides parish; was tenacious of preserving his domicile in Rapides, and upon one occasion went up there to vote, etc.;" " Had large property in Rapides; did not know of his owning any other property than in Rapides, etc." " In 1862, I think, the Richland plantation belonged to Mrs. Evans, the plaintiff in this suit. Mrs. Evans had control of the Richland plantation, and not her husband, in 1862."

Mrs. Perkins says: " This residence and domicile was in Rapides

parish, where he owned a plantation, etc. I never knew him to claim a domicile anywhere else, although after his marriage he spent most of his time, as my guest, on the Richland plantation, in this parish. The Richland plantation belonged to Mrs. Linton at that time, although the property (the Richland plantation) in the parish of East Baton Rouge belonged to Mrs. Linton, it was the house and home of myself and husband, and Mr. Linton was my guest whenever staying upon said plantation." " Mr. Linton and witness returned from Europe in the fall of 1860 to Richland plantation, where he, Linton, remained until they went to New Orleans, as above stated, except a few weeks spent by Mr. Linton on his plantation in Rapides." " During the time from the marriage of Mr. and Mrs. Linton until 1862 Mrs. Linton went to Rapides parish probably as many as five times, remaining each time from ten days to two and three weeks. Mr. Linton visited Rapides parish as often as two or three times each year, never remaining over a week when his wife was not with him."

A. L. Gusman says: " I first became acquainted with Mr. Linton in 1855 or 1856, and knew him until the commencement of the war. I knew Mr. Linton but slightly, but his wife very well. Mr. Linton stayed a good deal in this parish (East Baton Rouge) but I was a member of the Democratic Parish Convention in 1857, and the committee made a census of the voters of the parish and they did not put Mr. Linton down as they did not consider him a voter of this parish. I am satisfied that he did not become a voter after this time. When we were raising funds for the Creole guards in 1861, the officers went to the prominent and wealthy citizens to get contributions, and I, as one of the officers, although I considered Mr. Linton able and a friend, did not go to him (as we did not consider that he belonged to this parish and would contribute elsewhere.")

On cross-examination he says: " After Mr. Linton's marriage and up to the time I left Baton Rouge, in April, 1861, Mr. Linton was here very often and remained sometimes months at a time. Mr. Linton was a man of wealth and traveled a great deal. Mrs. Linton was Mrs. Perkins's only child." Dr. J. N. Williams says: "I was acquainted with him (Linton) from his marriage up to his death. I know he owned a plantation in the parish of Rapides from my first acquaintance with him up to the war. He had negroes on that plantation. The plantation was being cultivated by him until the war. He always spoke of that as his home. *He used to go to the plantation once or twice a year for a short time.* Mr. Linton spent a part of nearly every winter in New Orleans, and nearly every summer in the north or in Europe." H. V. Babin says: "I was acquainted with Duncan Linton, former husband of Mrs. Evans. *Mr. Linton was on the Richland plantation, in this parish, most of his time*

from the time of his marriage, which took place in 1854 or 1855, up to the war. He was abroad occasionally during that time. I was acquainted with Ackley Perkins (the person upon whom the citation was served). He was, I think, in 1861 on the Richland plantation managing it. I was sheriff of this parish from 1851 to 1863." Mr. Granary says: "I was acquainted with Duncan Linton. I know that he married Dr. Perkins's daughter. After he was married he was here most of the time up to the breaking out of the war, on his father-in-law's plantation." It appears that Linton resided in France at the time of his death in 1867, and that his succession was opened by the public administrator in Rapides in 1868. In 1872 his sisters brought suit (see 27 An. p. 351), alleging that Linton was not a resident of Rapides, but of New Orleans at the time of his death, and that the court of probate of Rapides had no jurisdiction over the succession, and prayed to have the order appointing the public administrator set aside.

The court held: "The evidence shows that Linton resided in France when he died, and that the only real estate he owned in Louisiana was situated in the parish of Rapides.

"The succession was properly opened in Rapides."

The plaintiff claims that this decision establishes conclusively the fact that Linton had no such domicile or residence in East Baton Rouge as the law requires at the time he was sued in 1861. This by no means follows, nor is that question in any manner involved in that case even were the present defendants, who were not parties, bound by it, as they are not. He might very well have had a domicile or sufficient residence for the purpose of being sued in East Baton Rouge in 1861, and yet as the court said, have "resided in France when he died," and the court based their decision not upon the ground that his principal establishment or his domicile was in Rapides when he died, but upon the ground that he had no "*domicile or residence*" here at all at his death, but as we have seen resided in France; "and that the only real estate he owned in Louisiana was situated in the parish of Rapides." C. C. art. 935. A review of all the evidence fails to show that Linton ever actually resided in Rapides, unless we should consider his going to his plantation as many as five times from his marriage in 1854 or 1855 to 1862, and "remaining there each time from ten days to two or three weeks," as shown by his mother-in-law's evidence, as establishing the fact, which is, however, more than offset by her own statement and that of other witnesses, that after his marriage he spent most of his time on the Richland plantation, the property of his wife, in the parish of East Baton Rouge. Although there is some evidence to the effect that he claimed his residence in Rapides, and once voted there, there is none that he made the declaration of residence required by the law, C. C. article 42, and in the

absence of such declaration the proofs both of the fact and the intention are left to the circumstances of each case. C. C. 43.

It is assumed in argument, but nowhere found in the record, that Linton resided and had his domicile before his marriage in Rapides. But in any event it is provided by article 166 of the Code of Practice that if a defendant reside alternately in different parishes he must be cited in that in which he appears to have his principal establishment or his habitual residence. If his residence in each *appear to be nearly of the same nature*, in such a case he may be cited in either at the choice of the plaintiff, unless he has declared pursuant to the provisions of the law in which of the parishes he intended to have his domicile. This we have already seen Linton did not do, or is not shown to have done. C. C. article thirty-eight defines the principal establishment to be that in which one " makes his habitual residence." This we think in the case of Linton sufficiently appears to have been on his wife's plantation in East Baton Rouge; at all events the mere visits paid by him to his plantation at distant intervals of time and for a few days or even weeks at a time are insufficient to establish the fact of residence there, which, as this court has often said, must accompany and indicate the intention in the absence of the declaration required by the law. The same article of the Civil Code last quoted (art. 38) further provides that if one " resides alternately in several places," which at most is all that is proved of Linton in this record, and nearly as much in one as in another, and has not declared his intention in the manner hereinafter prescribed, *any one of the said places* where he resides may be considered as his principal establishment at the option of the persons whose interests are thereby affected."

Under this provision and those of article 166 of the Code of Practice already quoted, Linton was properly sued in the parish of East Baton Rouge in 1861, and if so then was the revival suit also properly brought and judgment rendered.

In regard to the plaintiff's bill of exceptions, it will be perceived that we have considered the rejected portion of the evidence of Gusman without, however, its affecting our conclusions on the whole case. As to the evidence objected to by the plaintiff, we think the objection attached more to its effect than its admissibility in the absence of proof of the existence of better evidence.

Questions of domicile, such as are presented in this case, often involve great nicety of distinction, and as has been often said by our predecessors and, indeed, as is provided by the terms of the law in the absence of the formal declaration of domicile, each case must rest upon its own particular facts and circumstances. Hence we have detailed the evidence so minutely. Were the case before us on the same evidence

Evans and Husband vs. Payne & Harrison.

we incline strongly to the opinion that we should have rendered the same judgment, but most certainly at this distance of time, and after two solemn judicial inquiries followed by judgments, which are sought to be annulled purely by the parol testimony of witnesses as to a fact so material and so easily ascertained at the time, we are not disposed upon the evidence before us to annul those judgments, which were correct.

Judgment affirmed.

The Chief Justice recused himself in this cause.